# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TOM SUXSTORF, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAVALRY PORTFOLIO SERVICES, LLC, and CAVALRY SPV I, LLC,<br><br>Defendants. | Case No.: 16-cv-1603<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Tom Suxstorf (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of his counsel, and on information and belief as follows:

## NATURE OF ACTION

1.  Plaintiff brings this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Defendants in contacting Plaintiff and Class members on their cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (hereinafter referred to as the "TCPA").

2.  Defendants violated the TCPA by contacting Plaintiff and Class members on their cellular telephones via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or by using "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A), without their prior express consent within the meaning of the TCPA.

3.  Plaintiff brings this action for injunctive relief and statutory damages resulting from Defendant's illegal actions.

## JURISDICTION AND VENUE

4. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 47 U.S.C. § 227(b)(3),, 28 U.S.C. §§ 1331 and 1337; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (holding that federal courts have federal question jurisdiction over TCPA claims.).

5. This Court has personal jurisdiction over Defendants because, as the conduct at issue occurred in or was directed toward individuals in the state of Wisconsin, Defendants have established minimum contacts showing they have purposefully availed themselves to the resources and protection of the State of Wisconsin. Defendants do substantial business in Wisconsin.

6. Venue is proper in the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because a substantial part of the events giving rise to the claims, namely automated telephone calls to persons in this District and debt collection activities, occurred in this District.

**PARTIES**

7. Plaintiff Tom Suxstorf ("Plaintiff") is an individual citizen of the State of Wisconsin, who resides in South Milwaukee, Wisconsin.

8. Defendant Cavalry Portfolio Services, LLC ("Cavalry") is a debt collection agency with its principal offices located at 500 Summit Lake Drive, Suite 400, Valhalla, NY 10595.

9. Cavalry is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

2

10. Cavalry is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Cavalry is a debt collector as defined in 15 U.S.C. § 1692a.

11. Defendant Cavalry SPV I, LLC ("SPV") is a foreign limited liability company with its principal place of business located at 500 Summit Lake Dr, Ste 400, Valhalla, NY 10595-1340.

12. SPV is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time SPV acquires them.

13. Cavalry and SPV are under common corporate control. Cavalry collects defaulted debts that have been assigned to its related entity, SPV.

14. A company like SPV is vicariously liable for the actions of a second company placing autodialed debt collection calls to cellular telephones without consent, especially in a relationship as close as Cavalry's and SPV's. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 674 (2016) ("the Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations. The Ninth Circuit deferred to that ruling, 768 F. 3d, at 878, and we have no cause to question it." (internal citation omitted)

15. SPV is jointly responsible for the TCPA violations alleged in this Complaint. *Id.*

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

16. In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices.

17. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii)

prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

18. According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

19. On February 15, 2012, the FCC released a Declaratory Ruling wherein it clarified that a party must obtain ***prior express written consent*** from the recipient prior to making automated telemarketing calls to the recipient's cellular telephone. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2012 FCC Declaratory Ruling"), 27 F.C.C.R. 1830, 27 FCC Rcd. 1830, 55 Communications Reg. (P&F) 356, 2012 WL 507959 (Feb, 15, 2012), at ¶ 2.

20. After Cavalry's first call to Bentley's wireless phone, Cavalry had actual or constructive knowledge that Bentley's wireless telephone number was assigned to Bentley and not another person. "TCPA Omnibus Declaratory Ruling and Order," FCC 15-72 at 40:

> We clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such.

21. The Court is bound by all of the FCC's final orders relating to the TCPA. *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, footnote 4 (E.D. Wis. 2014) citing *CE*

*Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding); *Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that under the Hobbs Act, the FCC's TCPA orders are binding).

### FACTUAL ALLEGATIONS

22. At all times relevant, Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

23. Defendant sought to collect a debt that arose from a transaction incurred allegedly for personal, family or household purposes. Specifically, an HH Gregg-branded consumer credit card, issued by Synchrony Bank ("Synchrony"). *See* HH Gregg credit application on Synchrony's website. http://tinyurl.com/hyrv2px.

24. Plaintiff only had personal, non-business credit card accounts. Plaintiff opened and used credit cards, including the HH Gregg account, for personal use, namely, purchases of household goods and services.

25. Upon information and belief, Synchrony sold Plaintiff's account to Cavalry's related company, Cavalry SPV I, LLC ("Cavalry SPV"), after the account was in default. Cavalry's business model is to purchase defaulted consumer debt for pennies on the dollar. http://www.cavalryportfolioservices.com/aboutus.aspx

26. Suxstorf obtained a new telephone number in or around April 2016.

27. Suxstorf never provided his new cellular telephone number, ending in 0922, to Cavalry or to the original creditor or any agent or employee of either.

28. Suxstorf never provided Cavalry with express consent to receive prerecorded or automated calls by Defendant on Suxstorf's cellular telephone.

29. Suxstorf did not provide his cellular telephone number to the original creditor "during the transaction that resulted in the debt owed" because Plaintiff had a different cellular telephone number at the time he applied for any credit cards.

30. Beginning in or around October 2016, Cavalry began calling Suxstorf's cellular telephone in connection with an alleged debt owed to Cavalry SPV. These calls were made to Suxstorf's cellular telephone number, and consisted of repeated autodialed and/or prerecorded calls.

31. Defendant Cavalry called Suxstorf's cellular phone on October 3, 2016 and November 1, 2016 to attempt to collect an alleged debt allegedly owed to Cavalry SPV.

32. On October 1, 2016, Suxstorf received an initial written communication from Cavalry regarding the alleged debt that Cavalry was attempting to collect in the October and November phone calls.

33. Defendant is, and at all times mentioned herein was, a "person", as defined by 47 U.S.C. § 153(39) ("The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation.")

34. All telephone contact by Defendant to Suxstorf on his cellular telephone occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and/or used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

35. The telephone number that Defendant used to contact Suxstorf, with an "artificial or prerecorded voice" and/or made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

36. Suxstorf did not provide "prior express consent" allowing Defendant to place telephone calls to Suxstorf's cellular phone utilizing an "artificial or prerecorded voice" or

6

placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

38. Upon information and belief, Cavalry obtained Suxstorf's cellular telephone number through skip-tracing.

38. Defendant's telephone calls to Suxstorf's cellular phone were not "for emergency purposes" as described in 47 U.S.C. § 227(b)(1)(A).

39. Defendant's telephone calls to Suxstorf's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Suxstorf's prior express consent violated 47 U.S.C. § 227(b)(1)(A).

40. Under the TCPA, the burden is on Defendants to demonstrate that Suxstorf provided prior express consent within the meaning of the statute.

41. The Seventh Circuit has held that the "'called party' in § 227(b)(1) means the person subscribing to the called number at the time the call is made." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio v. State Farm Bank*, F.S.B., 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("called party" means the current subscriber and not the prior subscriber or intended recipient for purposes of the TCPA).

## COUNT I

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***

42. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

7

43. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

44. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## COUNT II

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***

46. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

47. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

48. As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

49. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting Defendants' violation of the TCPA in the future.

50. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

# CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.

52. Plaintiff brings this action on behalf of:

All persons within the United States who, on or after December 5, 2012, received a non-emergency telephone call from or on behalf of Cavalry to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice, and who either did not provide their cellular telephone number to the alleged creditor or who revoked prior express consent to contact the person's cellular phone.

Plaintiff Suxstorf represents, and is a member of, the Class. Excluded from the Class are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge to whom this action is assigned and any member of such Judge's staff and immediate family; and claims for personal injury, wrongful death and/or emotional distress.

53. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes that Class members number at minimum in the hundreds.

54. Plaintiff and all members of the Class have been harmed by the acts of Defendants.

55. This Class Action Complaint seeks injunctive relief and money damages.

56. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Defendants and/or its agents.

57. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions

9

Case 2:16-cv-01603-JPS   Filed 12/05/16   Page 9 of 12   Document 1

which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

      a. Whether Defendants and/or their agents made non-emergency calls to Suxstorf's and Class members' cellular telephones using an automatic telephone dialing system and/or an artificial or prerecorded voice;

      b. Whether Defendants and/or their agents utilized "skip tracing" methods to locate the cellular telephone numbers of non-customers;

      c. Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

      d. Whether Defendants' conduct was knowing and/or willful;

      e. Whether Defendants are liable for damages, and the amount of such damages;

      f. Whether Defendants should be enjoined from engaging in such conduct in the future; and

      g. Plaintiff asserts claims that are typical of each Class member. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has no interests which are antagonistic to any member of the Class.

33. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

34. A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the

TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

35. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## JURY DEMAND

45. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

B. As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff Suxstorf seeks for himself and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1), Plaintiff Suxstorf seeks for himself and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate Classes and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F. Such other relief as the Court deems just and proper.

Dated: December 5, 2016

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com

12

Case 2:16-cv-01603-JPS   Filed 12/05/16   Page 12 of 12   Document 1